IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD LYNN NORTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 13-1312-JDT-egb |
| | ) | |
| SAMANTHA PHILLIPS, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Plaintiff Richard Lynn Norton, a prisoner acting *pro se*, filed this action pursuant to 42 U.S.C. § 1983 in the Circuit Court for Lake County, Tennessee (ECF No. 1-1 at 1-7); he amended the complaint twice thereafter (*id.* at 8-13). The Defendants then removed the case to this Court. (ECF No. 1.) The Court issued an order on April 28, 2014, dismissing portions of the complaint and directing that process be issued for Corizon Health, Inc. ("Corizon"). (ECF No. 3.) The Court also directed that a subpoena be issued for Corizon requiring it to provide the full names and last known home addresses and telephone numbers of the individual Defendants, Dr. John Hochberg, Dr. Glen Babich, Dr. William Conway and Dr. Dezell. (*Id.* at 15-16.) On May 30, 2014, Plaintiff filed a motion to again amend the complaint seeking, *inter alia*, to clarify that Defendant Dezell's last name was actually Stetzel. (ECF No. 10.)

On June 16, 2014, Corizon provided the information required by the subpoena with regard to Defendants Conway, Babich and Hochberg but stated that Defendant "Dezell" was unknown. (ECF No. 19.) Therefore, on June 20, 2014, the Court granted Plaintiff's motion to amend only to

the extent it corrected Defendant Stetzel's name (ECF No. 20 at 3-5), directed the Clerk to issue process for service on Defendants Conway, Babich and Hochberg (*id.* at 6), and directed Corizon to provide a current or last known address and telephone number for Defendant Stetzel (*id.*). After Corizon provided that information (ECF No 22), the Court entered an order on July 1, 2014, directing that process also be issued for service on Stetzel (ECF No. 23).

Defendant Corizon filed a motion to dismiss on July 31, 2014 (ECF No. 29), which the Court granted on March 13, 2015 (ECF No. 50). Defendant Conway filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) or, in the alternative, for summary judgment on November 13, 2014. (ECF Nos. 41 & 42.) Similar motions were filed by Defendant Stetzel on November 17, 2014 (ECF Nos. 45 & 46), by Defendant Hochberg on May 4, 2015 (ECF Nos. 57 & 58), and by Defendant Babich on May 19, 2015 (ECF Nos. 60 & 61). Plaintiff filed no response to any of those motions. On December 10, 2015, Defendants Stetzel (ECF No. 65) and Conway (ECF No. 66) filed motions to dismiss for lack of prosecution and renewed their Rule 12(b) motions. Plaintiff filed a response to the latter motions on December 31, 2015. (ECF No. 67.)

The Defendants seek dismissal on various grounds, including insufficient service of process. This case was initially filed by Plaintiff in state court on September 26, 2013 (ECF No. 1-1 at 1-7), and service was first attempted on Defendant Conway by faxing a copy of the summons and complaint to the office of his employer (*id.* at 42), which is not proper service under either Tennessee or federal law. The process issued for Defendants Hochberg and Babich was returned unexecuted because they were no longer associated with the Tennessee Department of Correction and their addresses were unknown. (*Id.* at 35, 43.) The process issued for Defendant "Dezell" was returned unexecuted because no such person could be found. (*Id.* at 32.)

2

Following removal, this Court's June 20, 2014, order directing that process be issued and served on Defendants Conway, Hochberg and Babich specifically stated that the process must be served personally. (ECF No. 20 at 6.) The July 1, 2014, order directing that process be issued and served on Defendant Stezel contained the same instruction. (ECF No. 23 at 2.)

The U.S. Marshal returned the process for Defendant Babich unexecuted on July 11, 2014, with the notation that Babich now worked out of Missouri; however, an address was provided. (ECF No. 26.) Process was eventually re-issued (ECF No. 53), and Babich was served personally on April 29, 2015 (ECF No. 59). With regard to Defendant Hochberg, the issued process was delivered, not to the Defendant personally, but to his spouse. (ECF No. 31.)[1] Although four attempts were made, the Marshal was unable to find and serve Defendant Conway at the address provided for him. (ECF No. 32.) Similarly, despite repeated attempts, Defendant Stetzel could not be contacted at the telephone number given for him. (ECF No. 35.) Therefore, Defendants Hochberg, Conway and Stetzel have not been properly served with process.

As stated, the Defendants have all raised insufficient and/or untimely service of process as a basis for dismissal, pointing out the deficiencies in the attempts at service. However, even after receiving those motions, Plaintiff did not file any timely responses and has never requested that process be re-issued and properly served. In addition, Plaintiff's belated response to the renewal of Defendants' motions does not even address the service of process issue. Thus, with regard to Defendants Hochberg, Conway and Stetzel, Plaintiff has failed to take any action to remedy the defects in service. *See Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987) ("While Rochon and

---

[1] Although this method of service is generally authorized by Federal Rule of Civil Procedure 4(e)(2)(B), the Court's orders required personal service in this case.

other incarcerated plaintiffs proceeding in forma pauperis may rely on service by the U.S. Marshals, a plaintiff may not remain silent and do nothing to effectuate such service. At a minimum, a plaintiff should . . . attempt to remedy any apparent service defects of which [he] has knowledge."); *Freeman v. Collins*, No. 2:08-cv-00071, 2011 WL 4914873 (S.D. Ohio Oct. 17, 2011) (adopting report and recommendation).

As to Defendants Hochberg, Conway and Stetzel, the Court finds that this case is subject to dismissal for insufficient service of process. Although Defendant Babich also moves for dismissal on the ground that he was not *timely* served under Federal Rule of Civil Procedure 4(m), the Court declines to dismiss the claims against him on that basis since he was, eventually, properly served. There is nothing in the record to suggest that Defendant Babich suffered any significant prejudice due to the delay in service.

Defendants Hochberg and Babich also move for dismissal on the ground that the claims against them are barred by the one-year statute of limitations in Tennessee Code Annotated § 28-3-104(a)(3), pointing out that the original complaint does not allege the dates for any of the allegations of wrongdoing. "[A] plaintiff is ordinarily not required to plead that his claim is *not* barred by the statute of limitations, because the statute of limitations is an affirmative defense for which the defendant bears the burden of proof." *United States v. Carell*, 681 F. Supp. 2d 874, 888 (M.D. Tenn. 2009). However, the Sixth Circuit has held that "*[w]hen it affirmatively appears from the face of the complaint* that the time for bringing the claim has passed, the plaintiff cannot 'escape the statute by saying nothing.'" *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (emphasis added) (quoting *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)); *see also Howell v. Farris*, — F. App'x —, 2016 WL 3626823, at *1 (6th Cir. July 7, 2016).

4

Where it is "not 'apparent from the face of the complaint' that the claim is time-barred . . . the issue is one of fact." *In re EveryWare Global Sec. Litig.*, — F. Supp. 3d —, 2016 WL 1242689, at *18 (S.D. Ohio Mar. 20, 2016). In this case, since Plaintiff's original complaint contain no dates at all, it cannot be said that it "affirmatively appears" that the claims are time-barred. Therefore, a Rule 12(b)(6) dismissal on that basis is not warranted.[2]

All of the Defendants have also moved, in the alternative, for summary judgment. Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[3] or

---

[2] That result is fully supported by the fact that Plaintiff's medical records, the only evidence relied on by Defendants Hochberg and Babich, contain nothing to suggest that the claims against these Defendants are time-barred.

[3] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials– including the facts considered undisputed–show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

> In *Celotex Corp.*, the Supreme Court explained that Rule 56:
>
> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (same). However, the Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the inquiry is "whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The fact that a plaintiff does not respond does not require granting a motion for summary judgment. Nevertheless, if the allegations of the complaint are contravened by the defendants' evidence and the defendants are entitled to judgment as a matter of law on those facts, then summary judgment is appropriate. *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir. 1979). Although he did respond briefly to the renewed motions, Plaintiff submitted no additional evidence in opposition. (*See* ECF No. 67.)

The events at issue in this case took place at the Northwest Correctional Complex in Tiptonville, Tennessee, where Plaintiff was incarcerated at all relevant times. In the order of partial dismissal, the Court summarized Plaintiff's claims:

> The original complaint alleges that Plaintiff "is suffering from severe daily pains and weight lost [sic] and a life threatening medical condition from a ruptured Hernia and bleeding Ulcer." ([ECF No.] 1-1 at 3.) Plaintiff has seen Defendant [Hochberg] many times, but the only treatment prescribed has been TUMS. [Hochberg] allegedly told Plaintiff that Babich would not approve surgery to treat his conditions. . . . (*Id.*)
> 
> Plaintiff also allegedly suffers from hepatitis C and from inflammation that "keeps [his] stomach swelled and sick." (*Id.*) Defendant [Hochberg] has examined Plaintiff but has not prescribed any medications or other treatment because Defendant Babich will not approve any treatment. . . . (*Id.* at 3-4.)
> 
> Plaintiff also suffers from cancer in his right lung, which allegedly causes "severe daily pains in his lung, back, and inside the rib cages, and shortness of breath." (*Id.* at 4.) Defendant [Hochberg] has prescribed "Inhalation," but Babich allegedly refuses to approve "adequate medications and treatment for the life threatening Cancer." (*Id.*) . . . .
> 
> Plaintiff also suffers from spinal scoliosis, which has caused his legs and body to deteriorate. Defendant [Hochberg] ordered that Plaintiff take Lortabs twice a day for five days to combat severe burning and muscle spasms caused by the scoliosis. Defendant [Hochberg] also prescribed Nuerotin, but Babich and Corizon

7

refused to approve that prescription. [Hochberg], Babich and Corizon "will not approve [Plaintiff] for surgery, spinal steroid injections [and] adequate medications as ordered by the plaintiffs' [sic] Neurology's [sic]." (*Id.*) . . . .

The procedure for Plaintiff to obtain medical treatment is to sign up for sick call. He then sees a nurse, who refers him to see the doctor. It takes four to five weeks to see the doctor. The doctor, Defendant [Hochberg], typically prescribes a five-day supply of Lortab. When Plaintiff has used up his supply of Lortab, he is forced to begin the process again and to pay another $3.00 co-payment for the sick call. (*Id.* at 5.)

. . . .

Plaintiff's amended complaint, which was filed on September 26, 2013, is intended to supplement the original filing. The amended complaint alleges that Plaintiff saw Defendant Conway on September 17, 2013. Conway allegedly prescribed TUMS for Plaintiff's bleeding ulcer and ruptured hernia without examining or diagnosing him. ([ECF No.] 1-1 at 8.) Conway also failed to prescribe any medication or treatment for Plaintiff's hepatitis C, his liver injuries, or his spinal scoliosis. The only treatment prescribed for Plaintiff's lung infection and cancer was an inhaler. (*Id.* at 9.) Plaintiff seeks money damages from Defendant Conway. (*Id.*)

On October 7, 2013, Plaintiff filed a factual affidavit and a second amended complaint that is intended to supplement the original and amended complaints. The affidavit states that, on or about September 2013, an unidentified defendant, while pulling a tooth, took a dental drill and cut Plaintiff's gum in half, causing him serious injury. (*Id.* at 10.)

The second amended complaint alleges that, in August 2013, Plaintiff's "right jaw tooth broke off up inside of the Plaintiff's gum." (*Id.* at 12.) After signing up for sick call, Plaintiff was seen by Defendant Dezell, a dentist, who refused to pull the tooth for two weeks. (*Id.*) After waiting two weeks, Plaintiff signed up for sick call again. Defendant Dezell used a dental drill to cut into Plaintiff's upper gum, causing severe pain and injuries to Plaintiff's jaw and the nerves in his eyes. (*Id.*) Plaintiff seeks money damages from Defendant Dezell. (*Id.* at 13.)

(ECF No. 3 at 4-6.)

In support of their motions to dismiss or for summary judgment, the Defendants rely on portions of Plaintiff's medical records. (*See* ECF Nos. 42-1 & 46-1.) Plaintiff's original complaint is executed under penalty of perjury (ECF No. 1-1 at 6), so it must be treated as an affidavit.

8

Plaintiff also submitted an affidavit along with his second amended complaint against Defendant Stetzel. (*Id.* at 10-11.) However, Plaintiff did not file any response to Defendants' original motions. Therefore, Defendants' statements of undisputed material facts must be accepted as true. *See* Local Rule 56.1(d). In addition, as stated *supra*, Plaintiff's brief response (ECF No. 67) to the Defendants' renewed motions is not accompanied by any additional evidence.

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). "The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishments Clause of the Eighth Amendment, and is made applicable to convicted state prisoners and to pretrial detainees (both federal and state) by the Due Process Clause of the Fourteenth Amendment." *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). "A prisoner's right to adequate medical care 'is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs.'" *Id.* at 874 (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)); *see also Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component of an Eighth Amendment claim based on a lack of medical care requires that a prisoner have a serious medical need. *Blackmore*, 390 F.3d at 895; *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390

9

F.3d at 897; *see also Johnson*, 398 F.3d at 874. In this case, Defendant does not dispute that Plaintiff's heart condition was a serious medical condition.

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009); *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and also disregards that risk. *Id.* at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not amount to cruel and unusual punishment. *Id.* at 838. In this case, the Defendants do not dispute that Plaintiff had serious medical needs.

Plaintiff alleges in his complaint and amended complaint that he has various medical conditions including a bleeding ulcer, a ruptured hernia, hepatitis C, lung cancer, and spinal stenosis. He claims that his medical records will show that the Defendants have failed to treat him adequately for these conditions. (ECF No. 1-1 at 3-4.) However, the medical records submitted by the Defendants do not confirm that Plaintiff was suffering from all of these conditions.

While the NWCX medical providers noted "umbilical hernia" a few times in his records (*see* ECF No. 46-1 at 3, 5, 14), imaging tests performed on Plaintiff's abdomen on March 27, 2014,

showed no evidence of a ruptured hernia or ulcer.[4]  The only impressions noted in the radiologist's report were "moderate constipation" and "balistic fragment, right mid abdomen." (*Id.* at 33.)  In addition, while Plaintiff's medical records document that he does suffer from COPD, a chest x-ray from January 2011, which was specifically ordered because of a "history of spot on lung," showed "no acute disease." (ECF No. 42-1 at 24.)  Additional chest x-rays from January 2014 also showed "[n]o evidence of acute cardiopulmonary pathology." (ECF No. 46-1 at 32.)  Thus Plaintiff's allegation that he suffers from lung cancer is not supported by his medical records.

Plaintiff's medical records show that during his incarceration he was frequently provided treatment, or offered treatment that he refused, for his various illnesses.  He was examined regularly by many medical providers, including Defendants Hochberg and Conway, and was prescribed numerous medications to treat those conditions and alleviate pain.  Just in the five-month period from August through December 2013, Defendants Hochberg, Conway, Stetzel and others prescribed a variety of medications for Plaintiff, including Albuterol, Becolmethasone and Atrovert for COPD, Doxepin and nortryptyline for depression, penicillin and Cipro for infection, ibuprofen, Lortab and Mobic for various types of pain, Tums for gastro-esophageal reflux, Neurontin for muscle spasms, aspirin, and Alphagan eye drops. (*Id.* at 19-30.)  There is no indication in the records that any medical provider recommended any surgery or additional treatment for Plaintiff that was then denied by Defendant Babich or anyone else, as alleged in the complaint.

With regard to Defendant Stetzel, Plaintiff alleges that his medical records will show that for two weeks, Stetzel refused to pull a tooth that had broken off inside Plaintiff's gum. (ECF No.

---

[4] The medical records do show that Plaintiff was diagnosed with acid reflux disease (GERD) several years prior, in 2000. (*Id.* at 31.)

1-1 at 12.) When Defendant Stetzel did pull the tooth, he allegedly "knowingly and maliciously" cut into Plaintiff's upper gum with a dental drill, causing Plaintiff severe pain and injury. (*Id.*) The medical records show that Stetzel ordered Motrin (ibuprofen) for pain on August 12, 2013 (ECF No. 46-1 at 4, 20.) On September 4, 2013, Defendant Stetzel ordered additional ibuprofen plus penicillin to prevent infection, presumably after extracting the tooth. (*Id.* at 6, 21.) However, there is nothing in the medical records suggesting there were any complications that resulted from the extraction.

It is clear from Plaintiff's medical records that he has numerous medical problems; however, the records also show that he was provided a great deal of treatment while he was incarcerated at the NWCX. The medical records substantially contradict the allegations in the verified complaint and fail to demonstrate that any of the individual Defendants knew of and disregarded an excessive risk of harm to Plaintiff's health or safety. Therefore, Plaintiff has failed to show there are any genuine issues of material fact for trial.

For the foregoing reasons, the Defendants' motions to dismiss or for summary judgment (ECF Nos. 41, 45, 57 & 60) are GRANTED. Defendants' motions to dismiss for failure to prosecute (ECF Nos. 65 & 66) and motion for a hearing (ECF No. 62) are DENIED as moot.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* The same considerations that lead the Court to grant summary judgment also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

                                          s/ **James D. Todd**
                                          JAMES D. TODD
                                          UNITED STATES DISTRICT JUDGE